UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-60304-SMITH

UNITED STATES OF AMERICA

vs.

MARYNA PETUSHKOVA,

Defendant.
_______________________________________/

# FACTUAL PROFFER IN SUPPORT OF PLEA AGREEMENT

The United States of America and the defendant, Maryna Petushkova ("Maryna"), agree that in this matter the United States would have established beyond a reasonable doubt the following facts. The parties agree that the factual proffer is a summary relating to the Maryna's conduct and does not include every detail of the offense. Maryna agrees that she acted knowingly and willfully.

## Applicable Federal and State Laws Regulating Money Transmitting Activities

Under Title 18, United States Code, Section 5330(d)(2), the act of operating a money transmitting service includes accepting currency, funds, or value that substitutes for currency and transmitting the currency, funds, or value that substitutes for currency by any means.

Businesses that provided money transmitting services or redeemed money orders and other similar instruments or engaged in the transmission of currency, funds, or value that substitutes for currency are money transmitting businesses as defined in Title 18, United States Code, Section 5330(d)(1).

Title 31, United States Code, Section 5330(a), and regulations promulgated pursuant to that statute, required individuals who owned or controlled a money transmitting business to register the business with the Secretary of the Treasury no later than 180 days after the date on which the business was established.

The laws of the State of Florida required that a person or a business have a license to conduct a money transmitting business. Florida law punished the unlicensed operation of a money transmitting business as a felony offense.

Title 18, United States Code, Section 1960(b)(1)A) required money transmitting businesses, which affected interstate or foreign commerce in any manner or degree, to possess an appropriate money transmitting license from the State in which they operate.

**Defendant's Gift Card and Money Order Redemption and Transmission Business Activities**

Co-Defendant Oleksii Petushkov ("Oleksii") and Maryna are married. From 2019 through 2024, Oleksii and Maryna, through businesses they owned and controlled, exchanged cash for millions of dollars-worth of prepaid gift cards on behalf of the general public and transmitted the prepaid gift cards ("gift cards") or the value contained within the gift cards to other locations, accounts, or person. During this same period, Maryna and the Defendant also redeemed money orders to members of the general public (hereinafter referred to as "private citizens").

Private citizens came to Oleksii's and Maryna's place of business in Miami-Dade County to redeem the value contained within the gift cards and money orders. Their place of business was advertised to the public as a vinyl wrapping and car window tinting business. Questions were never asked about where and how the gift

cards or money orders were obtained nor were the true identities of the private citizens ever sought or known. Oleksii and Maryna would charge a percentage, typically 20%, to redeem the gift cards and money orders.

Cash was used to purchase these gift cards and money orders, which was obtained from other private citizens and questions were never asked as to where the cash came from. Oleksii and Maryna received between $40,000.00 to over $100,000.00 in cash at a time, which they used to redeem the gift cards and money orders other private citizens brought to their business. Oleksii and Maryna would then sell the gift cards to online businesses for a profit thereby transmitting the value contained within those gift cards to other businesses or locations. Oleksii and Maryna would eventually wire and transfer the cash provided by private citizens to redeem the gift cards and money orders back to those same private citizens.

A search of pertinent records establishes that the Defendant and Maryna and their businesses were never registered with the Secretary of the Treasury as a money transmitting business.

A search of Florida State records establishes that the Defendant and Maryna and their businesses were never licensed to operate a money service business in the State of Florida.

**<u>Undercover Law Enforcement Operation</u>**

Beginning July of 2023, law enforcement launched an undercover investigation into Oleksii and Maryna's business. On July 18, 2023, a confidential human source ("CHS1") audio and video recorded an in-person meeting with Oleksii and Maryna at a restaurant in Fort Lauderdale, Florida. During the meeting, Oleksii and Maryna

revealed that they operated a business that purchased large quantities of gift cards. Oleksii and Maryna told CHS1 that to operate their business, they needed large quantities of cash to purchase the gift cards. Oleksii and Maryna further stated that they needed to avoid the use of banks. CHS1 told Oleksii and Maryna that he/she had the capability of obtaining large quantities of gift cards as well as being able to provide bulk cash.

On October 6, 2023, CHS1 audio and video recorded meeting with Oleksii and Maryna at a restaurant in Fort Lauderdale to conduct a "gift card drop." During the meeting, CHS1 introduced an additional Confidential Human Source (CHS2) to Oleksii and Maryna. CHS1 presented $10,000 worth of gift cards and asked, "does it make any difference to you the source of the money or not?" Oleksii stated, "we don't ask about that...we don't ask." Maryna and Oleksii accepted the gift cards from CHS1 and agreed to pay him/her 80 percent of the card's value in cash later.

On October 12, 2023, CHS1 conducted a consensually audio and video recorded meeting with Maryna and Oleksii at a restaurant in Fort Lauderdale to pick up cash from the previous gift card drop. CHS1 told Maryna and Oleksii that the gift cards he provided were obtained with stolen money. Later, Oleksii handed CHS1 cash concealed in a napkin, which amounted to $7,920 and a returned gift card.

On October 17, 2023, CHS1 provided $5,000 worth of gift cards to Maryna and Oleksii through pictures via a Telegram chat that included CHS1, a second confidential human source ("CHS2"), Maryna and Maryna's associate. Maryna accepted some of the gift cards provided by CHS1 but requested that he/she provide the rest of them in person later.

On October 20, 2023, CHS1 met with Oleksii in Hallandale Beach and provided all the gift cards from the October 17, 2023 telegram chat.

On October 24, 2023, CHS1 met Maryna at her place of business, and Maryna paid CHS1 $4,000 in cash for the previously provided gift cards.

On October 30, 2023, CHS1 provided Maryna and Oleksii $5,000 worth of gift cards through the same Telegram chat.

On November 20, 2023, Maryna and Oleksii paid CHS1 $4,000 via cash and through an ACH transfer to a government controlled account for the gift cards provided on October 30, 2023.

On November 28, 2023, CHS1 audio and video recorded meeting with Maryna and her employee at Maryna's place of business. CHS1 provided $50,000 in U.S. currency to Maryna and told Maryna that the money came from the sale of cocaine. After counting the cash, Maryna told CHS1 that she would send either ACH transfers or wire transfers to CHS1's bank account in increments adding up to $50,000, plus 0.8 percent.

Between November 29, 2023, and December 6, 2023, Maryna sent six ACH transfers totaling $50,400 from a business account controlled by Maryna and Oleksii to a United States government undercover bank account.

On or about December 7, 2023, CHS1 audio and video recorded a meeting with Maryna and one of her employees at her place of business. CHS1 provided $3,000 in gift cards and $100,000 in cash to Maryna. CHS1 told Maryna, "My partners are happy...you're so fast." Maryna accepted both the gift cards and cash. Maryna told CHS1 she would give him 80 percent for the gift cards in cash and would provide a

combination of ACH transfers and wire transfers to CHS1's bank account later. The employee processed the gift cards using a card reader and a laptop, counted $2,400, and then handed CHS1 $2,400 for the gift cards.

Between December 12, 2023, and December 26, 2023, Maryna sent three ACH transfers and three wire transfers totaling $100,800 from a business account controlled by Maryna and Oleksii to a United States government controlled undercover bank account.

On or about December 20, 2023, CHS1 audio and video recorded a meeting with Maryna and Oleksii in Fort Lauderdale. During the meeting, CHS1, gave Maryna and Oleksii $4,000 worth of gift cards. During the meeting, Maryna and Oleksii acknowledged that they knew many of the individuals selling gift cards to them acquired the gift cards through theft and that the source of the cash CHS1 was providing them came from drug sales.

On or about December 21, 2023, CHS1 audio and video recorded a meeting with Maryna and her employee at her place of business. CHS1 provided $100,000 in cash to Maryna, which she then counted using a digital money counter. Maryna's employee then gave CHS1 $3,200 for the previous gift card drop.

Between December 27, 2023, and January 17, 2024, Maryna sent three ACH transfers and three wire transfers totaling $100,800 from a business account controlled by Maryna and Oleksii to a United States government controlled undercover bank account.

On or about January 8, 2024, CHS1 audio and video recorded meeting with Maryna's employee at Maryna's and Oleksii's place of business where CHS1 provided

$3,000 worth of gift cards to the employee. The employee then provided CHS1 with $2,400 in cash in exchange for the gift cards.

Through their gift card and money order redemption business Maryna and Oleksii obtained at least $250,000.00 in proceeds, which were used to fund the following assets:

DEFENDANT'S UNDERSTANDS THAT THE GOVT WILL SEEK FORFEITURE OF THE PROPERTIES CROSSED OUT AND INITIALED ALONG WITH ALL OTHER PROPERTIES LISTED.

(i) real property located at 424 NE 28 Drive, Wilton Manors, Florida 33334;

(ii) real property located at 222 SW 3 Terrace, Dania Beach, Florida 33004;

(iii) real property located at 1736 NE 17th Street, Fort Lauderdale, Florida 33305; and

(iv) all funds formerly on deposit in the following Continental Bank accounts:

1. Account Number 19002146 in the name of 3 Oceans LLC;
2. Account Number 19000044 in the name of Marine 85 Corp.;
3. Account Number 19000029 in the name of Trident Trade Corp; and
4. Account Number 19005169 in the name of Polar Pro.

Maryna and Oleksii engaged in financial transactions that affected interstate commerce to operate their gift card and money order redemption business when using wires and ACH transfers to transact in funds from the businesses' bank account at Continental Bank located in Utah and when they transmitted the value contained within the gift cards from the Southern District of Florida to other third parties and locations outside the State of Florida.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: Jan 20 26 By: ____________________
DERIC ZACCA
ASSISTANT UNITED STATES ATTORNEY

I have read the Factual Proffer in Support of Plea Agreement set forth above. I believe that the above-stated facts set forth all the elements for the offense of Prohibition of Unlicensed Money Transmitting Business, in violation of Title 18, United States Code, Section 1960, as charged in the Count 1 of the Information. I agree with all the facts set forth in the Factual Proffer in Support of Plea Agreement.

Date: Jan 20 26 ____________________
ROBERT TRACHMAN
ATTORNEY FOR DEFENDANT

Date: Jan 20 26 ____________________
MARYNA PETUSHKOVA
DEFENDANT